**2023 UT App 47**

**THE UTAH COURT OF APPEALS**

DAVIE MONTES,
Appellee,
*v.*
NATIONAL BUICK GMC INC.,
Appellant.

Opinion
No. 20210621-CA
Filed May 4, 2023

Fourth District Court, Provo Department
The Honorable Thomas Low
No. 210400542

Trevor C. Lang and Connor B. Arrington, Attorneys
for Appellant

Eric Stephenson, Attorney for Appellee

JUDGE DAVID N. MORTENSEN authored this Opinion, in which
JUDGE RYAN M. HARRIS concurred. SENIOR JUDGE KATE APPLEBY
dissented, with opinion.[1]

MORTENSEN, Judge:

¶1 National Buick GMC Inc. (National) sold a used car to Davie Montes using a motor vehicle contract of sale (the Purchase Agreement) that contained an integration clause and indicated that there were no "other terms agreed to" between the parties. The parties also signed an arbitration agreement (the Arbitration Agreement) that day. Later, a dispute arose, and Montes sued on the contract. National filed a motion to compel arbitration, which the district court denied, ruling that the integration clause and the parol evidence rule worked to exclude the Arbitration Agreement

---

1. Senior Judge Kate Appleby sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(7).

from adding to the terms of the contract. National appeals. We agree with the district court that the parties' agreement was fully integrated and did not include the terms contained in the Arbitration Agreement. We therefore affirm.

BACKGROUND

¶2 In March 2021, Montes purchased a used vehicle from National. Both parties signed the Purchase Agreement, which identified the car, set the sales price at $3,000, acknowledged that no trade-in or other credits applied, and indicated all other fees and charges. The Purchase Agreement contained the following integration clause:

> This [c]ontract includes all of the terms, conditions, restrictions, limitations and other provisions on both the face and the reverse side hereof. This contract cancels and supersedes any prior contract and as of the date hereof comprises the complete and exclusive statement of the terms of the [c]ontract relating to the subject matters covered hereby.

¶3 The Purchase Agreement also contained a section related to financing, in which the parties indicated that seller financing terms were not applicable and in which Montes signed a disclosure indicating that he would arrange financing. Additionally, the Purchase Agreement contained a notice integrating the "window form [Buyer's Guide] for this vehicle" as "part of this contract." (Brackets in original.) The Purchase Agreement also addressed warranties, specifying,

> Seller makes no warranty, express or implied, with respect to the merchantability, fitness for particular purpose, or otherwise concerning the vehicle, parts or accessories described herein. Unless otherwise

indicated by Seller in writing, any warranty is limited to the manufacturer's warranty, if any, as explained and conditioned by paragraph 4 on the reverse side hereof.

¶4 The Purchase Agreement had a large box at the bottom where "other terms agreed to" could be noted, but that space was empty, and a check box labeled "NONE" was marked with two Xs.

¶5 That same day, the parties also executed the Arbitration Agreement in the course of signing paperwork for the sale. It stated,

Any claim or dispute between the Parties, whether in contract, tort, statute, or otherwise (including the interpretation and scope of this Agreement, and the arbitrability of the claim or dispute), which arises out of or relates to Buyer's credit application, the condition of a vehicle, Buyer's purchase or financing contract, or any related transaction between the parties or related third-parties shall be resolved by neutral and binding arbitration in Salt Lake County, Utah before a single arbitrator and not by a court action or as a class action.

The Arbitration Agreement also addressed the topic of warranties, reiterating the denial of warranties and adding that "all used car purchases are as is and where is, except as may be expressed in writing by Seller." The Arbitration Agreement then stated that "Buyer is hereby authorized and encouraged to have a mechanic, at Buyer's expense, inspect the vehicle" and further discussed the topics of inspection and the condition of the car.

¶6 The next month, Montes filed a complaint against National, alleging fraud and other deceptive sales practices and requesting more than $300,000 in damages. Based on the

Arbitration Agreement, National filed a motion to stay litigation and compel arbitration. After further briefing and a hearing, the district court denied the motion. It determined that the Arbitration Agreement was ineffectual, reasoning that "[b]ecause the [Purchase] Agreement unambiguously comprises 'the complete and exclusive statement of the terms of the [c]ontract[,]' any other agreements between the parties are irrelevant" and the Arbitration Agreement should be disregarded under the parol evidence rule. National now brings this interlocutory appeal.

ISSUES AND STANDARDS OF REVIEW

¶7     National argues that the district court erred in applying the parol evidence rule to prevent consideration of the Arbitration Agreement. "[I]ssues pertaining to . . . admittance of parol evidence present questions of law which we review under a correctness standard, granting no particular deference to the trial court." *See Bennett v. Huish*, 2007 UT App 19, ¶ 8, 155 P.3d 917.

¶8     We also address Montes's request for attorney fees on appeal. "[E]ntitlement to attorney fees on appeal is a matter for us to determine in the first instance." *Tronson v. Eagar*, 2019 UT App 212, ¶ 15, 457 P.3d 407.

ANALYSIS

¶9     The parol evidence rule operates "to exclude evidence of contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of an integrated contract." *Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 11, 182 P.3d 326 (cleaned up). An integrated contract is "a writing or writings constituting a final expression of one or more terms of an agreement." *Id.* ¶ 12 (cleaned up). The district court concluded that because the Purchase Agreement included an integration clause stating that the Purchase Agreement provided

"the complete and exclusive statement of the terms of the [c]ontract," the parol evidence rule functioned to render any other contemporaneous agreement between the parties related to the sale, including the Arbitration Agreement, "irrelevant." We agree with this conclusion.

## I. The Effect of the Integration Clause

¶10 Our supreme court has stated that "if a contract is integrated, parol evidence is admissible only to clarify ambiguous terms; it is not admissible to vary or contradict the clear and unambiguous terms of the contract." *Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 11, 182 P.3d 326 (cleaned up). "The application of the parol evidence rule is therefore a two-step process." *Id.* First, we "must determine whether the agreement is integrated." *Id.* (cleaned up). If so, we take the second step of examining the contract for ambiguity because, for an integrated agreement, "parol evidence may be admitted only if [we make] a subsequent determination that the language of the agreement is ambiguous." *Id.* (cleaned up).[2]

¶11 An integrated contract may consist of more than one writing if the parties adopted the writings together "as the final and complete expression of their bargain." *See id.* ¶¶ 11–12 (cleaned up). Accordingly, National argues that the district court erred in failing to consider the Purchase Agreement and the Arbitration Agreement together, ultimately relying on a principle stated in *Bullfrog Marina, Inc. v. Lentz*, 501 P.2d 266 (Utah 1972).[3]

---

2. Neither party argues that the Purchase Agreement is ambiguous.

3. National cites *Jensen v. West Jordan City*, No. 2:12-CV-736-DAK, 2017 WL 4620983, at *9 (D. Utah Oct. 13, 2017), *aff'd*, 968 F.3d 1187 (10th Cir. 2020), in support of its proposition that, under *Bullfrog*

(continued…)

In that case, the parties had executed both an employment agreement and, later, a lease. *Id.* at 269. The question was whether the lease was an integrated agreement to which the parol evidence rule would apply. *Id.* at 270. The *Bullfrog Marina* court determined that consideration of parol evidence was appropriate and that there was substantial evidence to support the lower court's determination that the employment contract and the lease should be considered as one agreement. *Id.* The court also stated:

> The trial court did not err in following the rule of law that where two or more instruments are executed by the same parties contemporaneously, or at different times in the course of the same transaction, and concern the same subject matter, they will be read and construed together so far as determining the respective rights and interests of the parties, although they do not in terms refer to each other.

*Id.* at 271. National argues that under *Bullfrog Marina* and its progeny, the Purchase Agreement and Arbitration Agreement are not two separate contracts but rather two parts of the same contract; thus, the Arbitration Agreement is not precluded by the integration clause. Indeed, much of National's argument is that the question of parol evidence has no place in the interpretation of the Purchase Agreement since both the Purchase Agreement

_____

*Marina* and its progeny, the Purchase Agreement and Arbitration Agreement are not two separate contracts but rather two parts of the same contract. But this decision, like *Bullfrog Marina*, did not analyze the effect of a clear integration clause. *Jensen*, 968 F.3d at 1207 n.8 ("West Jordan has waived its argument, raised for the first time in this appeal in its reply brief, that the Settlement Agreement should be evaluated separately because it contains an integration clause."). Thus, our analysis on this point applies to *Jensen* just as it applies to *Bullfrog Marina*.

and the Arbitration Agreement are smaller parts of a single contract.

¶12 Montes, on the other hand, argues that the integration clause found in the Purchase Agreement precludes the Arbitration Agreement from applying to the Purchase Agreement. He relies on a more recent case from our supreme court, *Tangren Family Trust v. Tangren*, 2008 UT 20, 182 P.3d 326, which—unlike *Bullfrog Marina*—addressed the effect of an agreed-upon integration clause. In *Tangren*, our supreme court considered a lease with an integration clause (also known as a merger clause, *see Integration clause*, Black's Law Dictionary (11th ed. 2019)) and a separate oral agreement with contradictory terms, and the court stated that "the purpose and effect of including a merger clause is to preclude the subsequent introduction of evidence of preliminary negotiations *or of side agreements* in a proceeding in which a court interprets the document." *Tangren*, 2008 UT 20, ¶ 13 (cleaned up) (emphasis added). Thus, the court determined that parol evidence was not appropriately considered in the determination of whether the lease was an integrated agreement:

> To argue that the Lease is not the complete agreement of the parties is to argue in direct contradiction to the clear integration clause. Thus, we will not allow extrinsic evidence of a separate agreement to be considered on the question of integration in the face of a clear integration clause. To the extent any of our prior cases provide otherwise, we overrule those cases.

*Id.* ¶ 16 (cleaned up). Pointedly, the *Tangren* court expressly acknowledged that the contract at issue in *Bullfrog Marina* did not contain an integration clause, whereas the contract in *Tangren* did, further distinguishing the precedents set forth in *Bullfrog Marina* from the new rule put forth in *Tangren*. 2008 UT 20, ¶ 16 n.20. And

the court also expressly disavowed the *Bullfrog Marina* standard: "To the extent our statements in *Bullfrog Marina, Inc.*, *Eie*, *Spears*, and *Hall* suggest that extrinsic evidence of a separate oral agreement is admissible where the contract contains a clear integration clause, we disavow them." *Id. Contra Bullfrog Marina, Inc.*, 501 P.2d at 270; *Eie v. St. Benedict's Hosp.*, 638 P.2d 1190, 1194 (Utah 1981); *Spears v. Warr*, 2002 UT 24, ¶ 19, 44 P.3d 742; *Hall v. Process Instruments & Control, Inc.*, 890 P.2d 1024, 1028 (Utah 1995).

¶13    *Tangren* thus represented a sea change in Utah's jurisprudence regarding the treatment of fully integrated contracts, and later cases have followed *Tangren*'s lead. *See, e.g., iDrive Logistics LLC v. IntegraCore LLC*, 2018 UT App 40, ¶ 37, 424 P.3d 970 ("Determining which terms fall within the four corners of the contract is a straightforward task when a contract contains an integration clause, as is the case here."), *cert. denied*, 425 P.3d 803 (Utah 2018); *Daines v. Vincent*, 2008 UT 51, ¶ 22, 190 P.3d 1269 ("We recently held in *Tangren* that extrinsic evidence is not admissible on the question of integration where the contract at issue contains a clear integration clause. Thus, a contract is integrated if it contains a clear integration clause." (cleaned up)).

¶14    The *Tangren* court applied its holding only to oral side agreements because the side agreement at issue in that case was oral. *Tangren*, 2008 UT 20, ¶¶ 7 n.1, 17. But the language of *Tangren* is strong and categorical and, as we understand it, applies to written parol evidence as well.[4] Indeed, Utah already has case law

---

4. While the court stated, "We hold today that in the face of a clear integration clause, extrinsic evidence of a separate *oral* agreement is not admissible on the question of integration," *Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 17, 182 P.3d 326 (emphasis added), its language that "we will not allow extrinsic evidence of a separate agreement to be considered on the question of integration in the face of a clear integration clause" clearly applies

(continued…)

suggesting that written side agreements do fall under *Tangren*. In *Far West Bank v. Robertson*, 2017 UT App 213, 406 P.3d 1134, *cert. denied*, 417 P.3d 576 (Utah 2018), a party, citing *Bullfrog Marina*, tried to introduce as parol evidence an email it had received contemporaneously with the execution of a contract, despite the presence of an integration clause in the disputed contract. *Id.* ¶ 20. In holding that the email was inadmissible parol evidence, we acknowledged that an email was not the type of "instrument" at issue in *Bullfrog Marina. Id.* ¶ 21. Instead of stopping there, however, we continued to reason that "more importantly [than the email not being an instrument], [the party's] reliance on *Bullfrog Marina* is at odds with the Utah Supreme Court's more recent jurisprudence on the doctrine of integration." *Id.* We went on to reinforce the rule that separate agreements will not be considered when a contract contains an integration clause. *Id.* ¶¶ 23–24. Our language in *Robertson* strongly implies that even if an email was enough to be considered a formal "instrument," it would still be inadmissible under the *Tangren* standard.[5]

¶15 The signed Arbitration Agreement at issue in this case is likely the type of "instrument" that *Bullfrog Marina* was referencing, *see* 501 P.2d at 270–71, yet under *Tangren* and *Robertson*, it is still not admissible in the face of an integration clause unless the separate instrument is expressly referenced by the contract as being included or unless there is ambiguity in the contract. In *Robertson*, we noted that once a document (or group of documents) is "deemed an integration, under the parol

---

here, *id.* ¶ 16. It is possible that our supreme court did not intend this result, but we give *Tangren* its most reasonable reading and conclude that this is its natural application.

5. The dissent does not argue that we are wrong in suggesting that *Far West Bank v. Robertson*, 2017 UT App 213, 406 P.3d 1134, *cert. denied*, 417 P.3d 576 (Utah 2018), extended *Tangren*'s holding to non-oral parol evidence.

evidence rule evidence of contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of [the] integrated contract is inadmissible." 2017 UT App 213, ¶ 22 (cleaned up). And the Arbitration Agreement certainly adds a term—a requirement for arbitration. While this requirement applies to "[a]ny claim or dispute between the Parties, whether in contract, tort, statute, or otherwise," and is thus broader than the terms of the Purchase Agreement, it specifically binds the parties to arbitrate "[a]ny claim or dispute . . . which arises out of or relates to . . . the condition of a vehicle [or] Buyer's purchase . . . contract." In other words, the Arbitration Agreement adds a term directly to the Purchase Agreement. And beyond this, giving effect to the Arbitration Agreement would vary and indeed contradict the terms of the Purchase Agreement, which explicitly states "NONE" for "other terms agreed to."

¶16    Here, as in *Tangren*, the contract contains a clear integration clause. The plain language of the integration clause before us prevents our consideration of the Arbitration Agreement. The integration clause dictates that the Purchase Agreement "includes all of the terms, conditions, restrictions, limitations and other provisions" of the parties' agreement and makes clear that it "cancels and supersedes any prior contract and *as of the date hereof* comprises the complete and exclusive statement of the terms of the [c]ontract relating to the subject matters covered hereby." (Emphasis added.) The Arbitration Agreement was signed on the same date as the Purchase Agreement, though it is not clear which was signed first. Thus, the plain language of the integration clause renders the Arbitration Agreement canceled if it was signed before the Purchase Agreement and excluded if it was signed the same day—on "the date hereof"—but afterward. In other words, the text of the integration clause serves as both a backward-looking and a forward-looking invalidation of agreements made outside the Purchase Agreement. This language excludes additional "terms, conditions, restrictions, limitations and other

provisions"—and a requirement to arbitrate is just that. National can hardly cry foul when the plain language of the integration clause is applied to the facts of this case.

¶17 And the Arbitration Agreement does indeed address some of the "subject matters covered" by the Purchase Agreement, rendering it voided by the integration clause. National acknowledges that "both the Purchase [Agreement] and Arbitration Agreement . . . dealt with the same subject matter." We agree. Not only do both agreements have to do with the same overall transaction, but the Arbitration Agreement addresses warranties, which is a topic explicitly and repeatedly discussed in the Purchase Agreement. Both documents also discuss the condition of the vehicle. Accordingly, the plain language of the integration clause precludes the Arbitration Agreement's application because the Purchase Agreement "comprises the complete and exclusive statement of the terms of the [c]ontract *relating to the subject matters covered hereby*"—including these overlapping topics. (Emphasis added.) In other words, considering the Arbitration Agreement to be part of the contract would contravene the exclusivity imposed by the integration clause.

¶18 This conclusion is further supported by the parties' other statements in the Purchase Agreement indicating that the contract includes no terms beyond those set forth in that instrument. The front side of the Purchase Agreement has a section for "other terms agreed to" that has space for additional terms, and the parties marked the box that said "NONE," leaving the rest of the space blank. All they had to do to integrate the Arbitration Agreement into the Purchase Agreement was to write "Arbitration Agreement" in the space provided. Instead, they left it blank. Or, if National had wanted its standard Arbitration Agreement to apply to its standard Purchase Agreement for all sales, it could simply have stated so in the prepared portion of the Purchase Agreement. In fact, the Purchase Agreement did this for

another term by integrating the "window form [Buyer's Guide] for this vehicle" as "part of this contract." (Brackets in original.) The manner in which National incorporated the window form shows that National knew how to integrate other terms into the Purchase Agreement. It would have been easy for National to do the same for the Arbitration Agreement, and the failure to do so cuts against National. We rejected an argument like National's in *Robertson*:

> If, when drafting [the contract], the parties had indeed intended that the emails they exchanged in the days leading up to the date those instruments were signed should be included within the sweep of the instruments' integration clauses along with [certain identified documents], undoubtedly they would have made that explicit.

2017 UT App 213, ¶ 26. The same could be said here, but even more strongly. Had the parties meant for the Arbitration Agreement to come within the sweep of the Purchase Agreement's unambiguous integration clause, undoubtedly they would have taken advantage of the space provided exactly for such reference in the Purchase Agreement. But they didn't. Or they would have explicitly referenced the Arbitration Agreement in the text of the Purchase Agreement. But they didn't do that either. Furthermore, the parties didn't just omit mention of the Arbitration Agreement; they double-checked the box marked "NONE" for other terms. This affirmative action additionally signifies the parties' intent not to be bound by terms outside of the Purchase Agreement.[6] Therefore, the Arbitration Agreement

---

6. The dissent asserts that its conclusion that the Arbitration Agreement was a collateral contract is most consistent with "the general contract interpretation principle that 'we attempt to give effect to each provision and we look for a reading that harmonizes

(continued…)

cannot be added to the terms of the fully integrated Purchase Agreement.

## II. The Collateral Contract Exception

¶19    The dissent argues that the Arbitration Agreement falls under the collateral contract exception, *see infra* ¶¶ 34–38, relying on non-binding authority for the principle that the presence of a "merger clause does not prohibit the forming of a separate arbitration agreement contemporaneously" with another contract. *Kates v. Chad Franklin Nat'l Auto Sales N., LLC*, No. 08-0384-CV-W-FJG, 2008 WL 5145942, at *4 (W.D. Mo. Dec. 1, 2008); *see also Ritter v. Grady Auto. Group, Inc.*, 973 So. 2d 1058, 1062 (Ala.

---

the provisions and avoids rendering any provision meaningless.'" *See infra* ¶ 37 (quoting *McNeil Eng'g & Land Surveying, LLC v. Bennett*, 2011 UT App 423, ¶ 17, 268 P.3d 854 (cleaned up)).But in seeking to give effect to the Arbitration Agreement, the dissent renders meaningless the affirmative act of the parties in double-checking "NONE" for other terms agreed to. The dissent's insistence on giving effect to the Arbitration Agreement, which it postulates "the parties obviously intended . . . to be a collateral agreement with legal effect," *see infra* ¶ 37, would require us to depart from the plain language of the Purchase Agreement and of its integration clause. But "when we interpret a contract[,] we first look at the plain language of the contract to determine the parties' meaning and intent. If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Brady v. Park*, 2019 UT 16, ¶ 53, 445 P.3d 395 (cleaned up). Here the language within the four corners of the Purchase Agreement is unambiguous, so we determine the parties' intentions from the plain meaning of the contractual language.

2007) ("A merger clause . . . does not bar evidence of contemporaneous collateral agreements between the parties.").

¶20　First, we note that National does not actually argue that the Arbitration Agreement falls under the collateral contract exception, nor does its brief ever cite *Kates* or *Ritter*; instead, National insists that the two agreements "should be construed as one contract as a matter of law." The authority the *Ritter* court relied on states that "[i]t is only when the instrument shows that it does not contain all the terms of the contract . . . that evidence may be offered to show further stipulation than those expressed, *unless* it is proposed to prove an engagement independent of and collateral to the matters embraced in such written instrument." *See Alabama Elec. Coop., Inc. v. Bailey's Constr. Co.*, 950 So. 2d 280, 288 (Ala. 2006) (cleaned up) (emphasis added), *quoted in Ritter*, 973 So. 2d at 1062. Accordingly, it seems odd for the dissent to rest on this "overlooked" but "obvious" principle, *see infra* ¶ 29 note 9, when National has never explicitly offered such an interpretation.

¶21　But more substantively, we do not agree that the Arbitration Agreement can be properly considered collateral. We first note that the general principle of collateral contracts has been applied differently by various courts. *See* 11 *Williston on Contracts* § 33:26 (4th ed. 2022) ("[C]ourts do not agree regarding when an extrinsic agreement or term which existed prior to the integration or was made simultaneously with it involves a sufficiently separate and distinct matter that it is capable of existence as an independent legal act or when it must be disregarded as a futile attempt to change the effect of the legal act integrated in the written memorial."). Furthermore, the specific issue of the viability of an arbitration agreement in light of a purchase contract's integration agreement, while it has not been addressed in Utah, has been addressed in other jurisdictions, and the results have not been uniform:

Several courts have had opportunity to examine the effect of a merger clause on separately executed arbitration agreements in cases with similar facts— vehicle purchasers who agree to arbitrate in one document but contemporaneously sign [a] sales contract that contains no arbitration provision, but includes a merger clause stating that it is the "entire agreement."

. . . .

Courts in [some] states have . . . conclude[d] that a merger clause does not necessarily foreclose the enforceability of agreements reached in collateral documents, where they are contemporaneously executed as part of a single transaction.

. . . .

Other courts, however, have interpreted merger clauses more strictly, refusing to allow predecessor or contemporaneous documents, which purport to add to or alter the "final agreement," to require arbitration or other matters.

*TD Auto Fin. LLC v. Reynolds*, 842 S.E.2d 783, 789–90 (W. Va. 2020) (collecting cases). While we believe it is—at least theoretically— possible that a contract bearing an integration clause could be integrated as to the topics it covers while a wholly distinct contract coexists collaterally under the larger umbrella of the whole of the parties' agreement, we are not certain that this is a legal possibility under Utah's case law on integration clauses.

¶22 The language in *Tangren Family Trust v. Tangren*, 2008 UT 20, 182 P.3d 326, and elsewhere suggests that an integration clause renders not just the contract bearing it but the whole agreement integrated, thereby precluding the possibility of collateral contracts. Again, the *Tangren* court stated, "To argue that the Lease is not the *complete agreement of the parties* is to argue in direct

contradiction to the clear integration clause." *Id.* ¶ 16 (emphasis added). It also said, "Importantly, we have explained that when parties have reduced to writing what appears to be a complete and certain agreement, it will be conclusively presumed, in the absence of fraud, that the writing contains *the whole of the agreement between the parties*." *Id.* ¶ 12 (cleaned up) (emphasis added). In other words, while the dissent presents the question of whether the Purchase Agreement is fully integrated as essentially irrelevant to the issue of whether the two documents in question can operate collaterally, we believe that the Purchase Agreement's very integration also renders it "the whole of the agreement between the parties." *See id.* (cleaned up). When the *Tangren* court determined that the lease was integrated, it stated, "We agree that the [l]ease is a *final and complete expression of* [*the parties'*] *bargain* . . . ." *Id.* ¶ 17 (emphasis added). In other words, the lease didn't just provide the complete terms of its own application, it provided the complete terms of the parties' whole agreement. Additionally, when the court discussed what role parol evidence could play after a finding of integration, it stated that "if a contract is integrated, parol evidence is admissible *only* to clarify ambiguous terms." *Id.* ¶ 11 (cleaned up) (emphasis added). Under a plain reading of this language, the dissent's allowance of parol evidence to determine if the parties agreed to a separate, collateral contract is simply not permissible. The dissent argues that parol evidence is only so limited "to determine the initial question of whether a contract is fully integrated," *see infra* ¶ 30, but that is not what *Tangren* says. *Tangren*'s language expressly excludes side agreements. *Tangren*, 2008 UT 20, ¶ 13.

¶23    Furthermore, as noted above, in *Far West Bank v. Robertson*, 2017 UT App 213, 406 P.3d 1134, we stated that once a document (or group of documents) is "deemed an integration, under the parol evidence rule evidence of contemporaneous conversations, representations, or statements offered for the purpose of varying *or adding to the terms of the integrated contract* is inadmissible." *Id.* ¶ 22 (cleaned up) (emphasis added). This runs counter to the

dissent's suggestion that an integration clause merely prevents the operation of contradictory terms, not excluding from consideration parol evidence of additional, noncontradictory terms. *See infra* ¶ 36. If an integration clause renders a contract the parties' whole, fully integrated agreement, and if parol evidence of additional—not just contradictory—terms is prohibited, collateral contracts appear to be a legal impossibility under Utah law on integration clauses.

¶24 But even if this is not true, here the specific language of the Purchase Agreement controls to prevent consideration of the Arbitration Agreement as a collateral contract.[7] The actual

---

7. Differences between the language at issue in *Ritter v. Grady Auto. Group, Inc.*, 973 So. 2d 1058 (Ala. 2007), and that of the Purchase Agreement preclude that case from providing the support the dissent desires even if the possibility of a collateral contract is not foreclosed. First, the Purchase Agreement contains a statement that no other terms apply—the double-checked box labeled "NONE"—while the purchase agreement at issue in *Ritter* did not.

Second, there are material differences in the language of the integration clauses. Notably, the integration clause at issue in *Ritter* stated, "No oral representations are binding unless written on this form and all terms of the agreement are printed or written herein." *Id.* at 1062 (cleaned up). This language is more limited than that of the present integration clause.

Third, there is no indication that in *Ritter* the arbitration agreement purported to establish terms for topics covered by the purchase contract. *See id.* at 1063–65. The court found the arbitration agreement there to be collateral because, in part, the topics covered therein and in the purchase contract were different and "the agreements [were] not so related that one would expect them to be included in the same document." *Id.* at 1065. But we conclude that the topics of the Purchase Agreement and the

(continued…)

language of the integration clause excludes any statements of terms related to any "subject matter[] covered" by the Purchase Agreement.[8] Because both documents discuss the condition of the car and the warranties involved in the sale, their topics do overlap—a reality that the dissent ignores. *See infra* ¶ 35.

---

Arbitration Agreement overlap—a conclusion that excludes the Arbitration Agreement's operation based on the language of the integration clause.

8. While the integration clause in *Kates v. Chad Franklin Nat'l Auto Sales N., LLC*, No. 08-0384-CV-W-FJG, 2008 WL 5145942 (W.D. Mo. Dec. 1, 2008), is substantially similar to the one here, *see id.* at *3, we note two distinguishing factors between that case and the present case. First, while in *Kates* the parties did fail to check a box acknowledging the application of an arbitration agreement, *see id.*—though the *Kates* court may have determined that "the checkbox in the sales contract referred to the arbitration clause on the back of that contract, not the separate arbitration agreement signed by the buyer," *Stubblefield v. Best Cars KC, Inc.*, 506 S.W.3d 377, 381 (Mo. Ct. App. 2016)—here the parties affirmatively double-checked the box indicating "NONE" for other terms. We give meaning to this intentional action.

    Second, the *Kates* court did not determine that the arbitration agreement related to the subject matters covered by the parties' final agreement such that it was excluded by the plain language of the integration clause, but we do.

    Furthermore, though the *Kates* court highlighted that the arbitration agreement was "governed by the Federal Arbitration Act ('FAA'), 9 U.S.C. § 1, et seq., at the agreement of the parties," which "[t]he Supreme Court has interpreted . . . as ensuring the enforceability of arbitration agreements," 2008 WL 5145942, at *2, "state and federal policies favoring arbitration cannot be used to defeat the plain language of the parties' contract," *HITORQ, LLC v. TCC Veterinary Services, Inc.*, 2021 UT 69, ¶ 25, 502 P.3d 281 (cleaned up).

Accordingly, even if the terms in the Arbitration Agreement on warranties and vehicle condition do not directly contradict their counterparts in the Purchase Agreement, as the dissent seems to demand, *see infra* ¶¶ 32–33, 36, the very existence of any terms on those topics in the Arbitration Agreement disqualifies that document from being collateral based on the integration clause's clear language on exclusivity.

### III. Attorney Fees

¶25    Montes requests that we provide an award for his attorney fees and costs. He provides two grounds for this request. First, he argues that an award for attorney fees and costs is warranted under rule 33 of the Utah Rules of Appellate Procedure. Alternatively, Montes argues that he is entitled to such an award pursuant to the terms of the Purchase Agreement. We decline to award fees and costs on either ground.

¶26    Rule 33 of the Utah Rules of Appellate Procedure indicates that "if the court determines that a motion made or appeal taken under these rules is either frivolous or for delay, it will award just damages, which may include . . . reasonable attorney fees, to the prevailing party." Utah R. App. P. 33(a). The rule defines a "frivolous appeal" as "one that is not grounded in fact, not warranted by existing law, or not based on a good faith argument to extend, modify, or reverse existing law." *Id.* R. 33(b). Given that various courts have disagreed as to outcomes in cases with similar facts, *see supra* ¶ 21, and that our own esteemed colleague disagrees with our resolution, this case clearly does not involve a frivolous appeal, *see Thayne v. Thayne*, 2022 UT App 122, ¶ 17 n.9, 521 P.3d 190 ("Although [the appellant's] appeal was unsuccessful, we do not see that it rises to the level of frivolous and warrants sanctions under rule 33."); *O'Brien v. Rush*, 744 P.2d 306, 310 (Utah Ct. App. 1987) ("A frivolous appeal is one without merit."). We also do not conclude that National's appeal was

brought merely for delay. Accordingly, we decline to award fees and costs on this ground.

¶27 Alternatively, Montes argues that he should receive fees and costs based on the language of the Purchase Agreement. Our supreme court has determined that because on interlocutory appeal "final judgment has yet to be entered[,] . . . [u]nless provided by statute, there shall be no application for costs or attorney[] fees made in connection with a petition for review by interlocutory appeal. Issues of costs and attorney[] fees, if any, shall abide the final resolution of the adjudication." *Benjamin v. Amica Mutual Ins. Co.*, 2006 UT 37, ¶ 39, 140 P.3d 1210 (cleaned up). "We therefore instruct the district court to evaluate [Montes's] request for costs and attorney fees incurred in defending against this interlocutory appeal when the case is finally resolved and it can identify the prevailing party." *See id.*

CONCLUSION

¶28 The Purchase Agreement is fully integrated. By glomming a side agreement—the Arbitration Agreement—onto the Purchase Agreement, National asks us to add a term to the contract. This is inconsistent with both Utah law and the text of the parties' integration clause. *Tangren* and the plain language of the Purchase Agreement expressly and dispositively exclude any operation of the Arbitration Agreement. Accordingly, we affirm. We decline to award Montes attorney fees on this interlocutory appeal.

—————

APPLEBY, Senior Judge, dissenting:

¶29 I dissent. Although extending *Tangren Family Trust v. Tangren*, 2008 UT 20, 182 P.3d 326, arguably supports the majority opinion's conclusion, I do not agree that *Tangren* requires the

result the majority opinion reaches. Instead, I agree with National that the district court "incorrectly excluded the parties' separate Arbitration Agreement under the parol evidence rule."[9]

¶30 The parol evidence rule "exclude[s] evidence of contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of an *integrated* contract." *Id.* ¶ 11 (quotation simplified). *Tangren* addressed what evidence can be considered to determine the initial question of whether a contract is fully integrated. *See id.* ¶ 16 ("[This case] does not present a circumstance under which we allow extrinsic evidence to be considered *on the question of integration* in the face of a clear integration clause. . . . To the extent any of our prior cases provide otherwise, we overrule those cases." (emphasis added)); *id.* ¶ 17 ("We hold today that in the face of a clear integration clause, extrinsic evidence of a separate oral agreement is not admissible *on the question of integration*." (emphasis added)).

¶31 Nothing in *Tangren* modifies the parol evidence rule itself or how it is to be applied once an integrated contract brings the rule into play. Instead, the *Tangren* court quoted, without

---

9. National raises the issue of whether the district court correctly determined that the Arbitration Agreement was irrelevant under the parol evidence rule. Thus, our consideration of that rule and its exceptions—even those not argued by National—is proper. *See State v. Johnson*, 2017 UT 76, ¶ 14 n.2, 416 P.3d 443 ("We view issues narrowly, but . . . new arguments, when brought under a properly preserved issue or theory, do not require an exception to preservation." (quotation simplified)); *Kaiserman Assocs., Inc. v. Francis Town*, 977 P.2d 462, 464 (Utah 1998) ("In our view, an overlooked or abandoned argument should not compel an erroneous result. We should not be forced to ignore the law just because the parties have not raised or pursued obvious arguments.").

alteration, prior case law defining the parol evidence rule. *Id.* ¶ 11. In doing so, the *Tangren* court acknowledged that (1) "the parol evidence rule has a very narrow application," *id.* (quotation simplified), and (2) the rule prohibits only the consideration of parol evidence that would somehow alter an integrated contract, *id.* (explaining that the rule "exclude[s] evidence of contemporaneous conversations, representations, or statements offered for the purpose of *varying or adding* to the terms of an integrated contract" (emphasis added) (quotation simplified)); *id.* ("If a contract is integrated, parol evidence . . . is not admissible *to vary or contradict* the clear and unambiguous terms of the contract." (emphasis added) (quotation simplified)); *see also id.* ¶ 18 ("The parol evidence rule therefore bars the use of extrinsic evidence *to vary or add to the terms* of the [contract] because it is valid, integrated, and unambiguous." (emphasis added)); *id.* ¶ 13 (stating that a document's merger clause precludes evidence of side agreements when interpreting *that* document).

¶32 Indeed, our supreme court has long recognized that the parol evidence rule "should not be regarded as applicable in rigidity and without exception." *Youngren v. John W. Lloyd Constr. Co.*, 450 P.2d 985, 987 (Utah 1969). Additionally, the court has long recognized the collateral contract exception to the parol evidence rule: "[T]he fact that the parties have a written contract on a subject does not prevent them from entering into other agreements relating to the same general subject matter." *Id.; see also Garrett v. Ellison*, 72 P.2d 449, 451 (Utah 1937) ("Of course, the rule, even as between the parties to the instrument, does not foreclose all parol evidence, but only such as would change or vary or contradict the terms of the writing, when such terms are clear and definite."); *Mooneyham v. BRSI, LLC*, 682 F. App'x 655, 660 (10th Cir. 2017) (stating that a merger clause "precludes incorporation of other agreements into the [contract]" but "doesn't preclude incorporation of other agreements into the transaction as a whole"); 11 *Williston on Contracts* § 33:27 (4th ed. 2022). And I am not prepared to say that *Tangren*'s references to

the "complete agreement" or "complete expression" existing in that case were carefully chosen phrases meant to convey a determination that collateral contracts are now "a legal impossibility under Utah law on integration clauses," *see supra* ¶¶ 22–23; that is, I do not think *Tangren*—a case that neither mentioned collateral contracts nor addressed facts that could have supported the existence of a collateral contract—consciously used these phrases to implicitly overrule prior case law allowing a collateral contract to exist alongside a fully integrated contract.[10]

¶33    In sum,

> [The parol evidence rule] serves a useful purpose in appropriate circumstances in safeguarding the integrity of [written] documents. However, it should not be applied with any such unreasoning rigidity as to defeat what may be shown to be the actual purpose and intent of the parties, but should be applied in the light of reason to serve the ends of justice. It does not preclude proof of agreements as to collateral matters relating to the contract or its performance, so long as they are not inconsistent with nor in repudiation of the terms of the written agreement.

*FMA Fin. Corp. v. Hansen Dairy, Inc.*, 617 P.2d 327, 329 (Utah 1980) (footnote omitted); *see also* 11 *Williston on Contracts* § 33:28 (4th ed. 2022) ("Although a binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them, the rule does not apply to a collateral agreement, that is, a separate

---

10. I also note the significant implications of the majority's broad reading of *Tangren*. Under its reasoning, whenever parties execute a contract with an integration clause, they cannot simultaneously execute any other valid contracts without incorporating them into the first contract.

contract between the same parties which does not contradict, vary, or alter and is not inconsistent with the terms of the written instrument."). Thus, the ultimate question in the case before us is whether the Arbitration Agreement "is within the scope of" the Purchase Agreement or whether it "is independent of, collateral to, and not inconsistent with the [Purchase Agreement] even though it relates to the same general subject matter and grows out of the same transaction." *See* 11 *Williston on Contracts* § 33:27 (4th ed. 2022).

¶34 The majority opinion reasons that the Arbitration Agreement is not a collateral contract because it is inconsistent with the Purchase Agreement's double-checked box indicating no "other terms." For several reasons, I disagree.

¶35 First, considering the double-checked box in context, I cannot agree that it is broader than the Purchase Agreement's integration clause itself. The integration clause states that the Purchase Agreement "comprises the complete and exclusive statement of the terms of the [c]ontract *relating to the subject matters covered hereby*." (Emphasis added.) Thus, the clause does not foreclose all agreements tangentially related to the vehicle, but only those agreements relating to the matters *covered by* the Purchase Agreement, that is, matters governing the sale of the vehicle. Likewise, the double-checked box does not prevent the parties from agreeing to any other terms, but only other terms related to the sale of the vehicle that the contract is meant to govern. Thus, because the Purchase Agreement contains the integration clause and rejects additional terms related to the sale of the vehicle, it alone governs the terms of the sale of the vehicle; accordingly, no parol evidence of other agreements should be considered when interpreting the Purchase Agreement and determining the parties' rights and responsibilities related to the sale. But the Arbitration Agreement addresses a collateral issue not "covered" by the Purchase Agreement—the actions of the parties if a dispute should arise between them (and not just a

dispute based on the Purchase Agreement, but any dispute, "whether in contract, tort, statute, or otherwise").

¶36    Second, I do not agree that Utah's case law supports the majority opinion's broad interpretation of the meaning of the double-checked box. In each of the cases on which the majority opinion relies, the prohibited side agreement at issue was directly contrary to the express principal terms of the integrated contract. *See Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 14, 182 P.3d 326 (oral agreement that the contract would not be a valid contract at all); *iDrive Logistics LLC v. IntegraCore LLC*, 2018 UT App 40, ¶ 39, 424 P.3d 970 (parol evidence that "effectively change[d] multiple key terms of the [a]greement"), *cert. denied*, 425 P.3d 803 (Utah 2018); *Daines v. Vincent*, 2008 UT 51, ¶ 34, 190 P.3d 1269 (parol evidence that an executed release "from any and all liabilities and or claims in connection with services provided" was not intended to release a prior claim to eight ownership shares); *Far West Bank v. Robertson*, 2017 UT App 213, ¶ 20, 406 P.3d 1134 (email evidence that would have added an "essential term" to the parties' agreement and ultimately excused the defendant's nonpayment of obligations under the agreement and provided entitlement to an award of damages), *cert. denied*, 417 P.3d 576 (Utah 2018). None of these cases refused to consider a separate written contract that in no way contradicted or modified the "clear and definite" type of terms that the parol evidence rule protects.[11] *See Garrett*, 72 P.2d at 451.

---

11. I find persuasive several cases from other jurisdictions that *have* addressed the issue before us and ultimately allowed the operation of collateral arbitration agreements. *See, e.g.*, *Ritter v. Grady Auto. Group, Inc.*, 973 So. 2d 1058, 1063–65 (Ala. 2007) (applying the collateral contract exception to the parol evidence rule to allow the application of a non-contradictory arbitration agreement that "govern[ed] the relationship between the parties
(continued…)

¶37    Third, the majority opinion's interpretation of the double-checked box is inconsistent with the general contract interpretation principle that "we attempt to give effect to each provision and we look for a reading that harmonizes the provisions and avoids rendering any provision meaningless." *McNeil Eng'g & Land Surveying, LLC v. Bennett*, 2011 UT App 423, ¶ 17, 268 P.3d 854 (quotation simplified). Given the circumstances under which the documents here were executed, the parties obviously intended the Arbitration Agreement to be a collateral agreement with legal effect. I cannot agree that they signed multiple documents in connection with the sale of this vehicle but intended only one of them to be effective—for some reason signing additional documents as an exercise in futility. Thus, if we determine the Arbitration Agreement was not a collateral agreement, we thereby violate the parties' contractual intentions, although their intentions should be the driving consideration. *See WebBank v. American Gen. Annuity Service Corp.*, 2002 UT 88, ¶ 17, 54 P.3d 1139 ("The underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract."); *Johnson ex rel. Johnson v. JF Enters., LLC*, 400 S.W.3d 763, 769 (Mo. 2013) ("In this case, the intent of the parties is demonstrated by all the documents the parties signed contemporaneously. To protect the sanctity of the parties' written contract, all the provisions in the writings can and should be harmonized and given effect, including a valid arbitration agreement."); *Najera v. David Stanley Chevrolet, Inc.*, 2017 OK CIV APP 62, ¶ 17, 406 P.3d 592 ("If we were to conclude that the [sales

---

preceding and following the sale of the car"); *Kates v. Chad Franklin Nat'l Auto Sales N., LLC*, No. 08-0384-CV-W-FJG, 2008 WL 5145942, at *4 (W.D. Mo. Dec. 1, 2008) ("Arbitration agreements that are separate from an underlying purchase or financing agreement are not unusual and are routinely enforced. The Court further finds that the merger clause does not prohibit the forming of a separate arbitration agreement contemporaneously with the other contracts in this matter." (quotation simplified)).

contract] constitutes the only and complete agreement of the parties, execution of these other documents would be rendered nugatory. Such a result would fail to effectuate the intent the parties clearly expressed by executing the various agreements together.").

¶38    I would determine that the Arbitration Agreement, which does not "vary or contradict the clear and unambiguous terms of the [Purchase Agreement]," *see Tangren*, 2008 UT 20, ¶ 11 (quotation simplified), is a collateral agreement and therefore not rendered invalid or irrelevant through the application of the parol evidence rule.

—————