*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 42**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

DAVIE MONTES,
*Respondent,*

*v.*

NATIONAL BUICK GMC, INC.,
*Petitioner.*

No. 20230582
Heard September 6, 2024
Filed December 12, 2024

On Certiorari to the Utah Court of Appeals

Fourth District Court, Provo
The Honorable Thomas Low
No. 210400542

Attorneys:

Eric Stephenson, St. George, for respondent

Erik A. Olson, Connor B. Arrington, Salt Lake City, for petitioner

ASSOCIATE CHIEF JUSTICE PEARCE authored the opinion of the Court in which CHIEF JUSTICE DURRANT, JUSTICE PETERSEN, JUSTICE HAGEN, and JUSTICE POHLMAN joined.

ASSOCIATE CHIEF JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1 In connection with the sale of a used car, a customer and a dealership signed two agreements. The first, a Purchase Agreement, governed general sales terms and asserted, in an integration clause, that it contained "the complete and exclusive statement" of terms "relating to the subject matters covered hereby." The Purchase Agreement incorporated a Buyer's Guide, but did not refer to any other agreements. The second agreement,

an Arbitration Agreement, claimed to govern "[a]ny claim or dispute" arising from the "Buyer's purchase or financing contract" and did not include an integration clause.

¶2 After experiencing problems with the vehicle, the customer sued. The dealership moved to compel arbitration. The district court denied the dealership's motion, ruling that the Purchase Agreement, by the terms of its integration clause, "comprise[d] the only agreement between the parties." The court of appeals agreed and affirmed. We reverse the determination that the Purchase Agreement's integration clause precludes consideration of the Arbitration Agreement, vacate the ruling denying the motion to arbitrate, and remand for further proceedings consistent with this opinion.

## BACKGROUND[1]

¶3 Davie Montes bought a used car. He and the dealership, National Buick GMC (National), signed at least two agreements in connection with the sale: a Purchase Agreement and an Arbitration Agreement. The Purchase Agreement covered, among other topics, price, financing obligations, and a disclaimer of warranties.

¶4 The Purchase Agreement also made three references to terms or potential terms outside of its four corners. First, a notice, with a separate signature line for Montes, acknowledged receipt of a "Buyer's Guide." The notice declared the Guide both "part of this contract" and superior to it, "overrid[ing] any contrary provisions." Second, a box for "OTHER TERMS AGREED TO" was left empty, with a checkbox for "NONE" filled in by two Xs.

---

[1] The court of appeals' opinion recites facts about the contracts at issue and the genesis of the parties' dispute, even though the district court appears to have done very little fact finding in the course of ruling on the motion to compel arbitration. *See Montes v. Nat'l Buick GMC, Inc.*, 2023 UT App 47, ¶¶ 2–6, 530 P.3d 544. Our background largely mirrors that of the court of appeals.

Among other facts, the court of appeals notes that the parties "executed the Arbitration Agreement in the course of signing the paperwork for the sale." *Id.* ¶ 5. Without challenging this description directly, Montes fleetingly suggests that the dealership has not marshaled evidence showing that Montes signed the arbitration agreement and argues that we should affirm the court of appeals on that basis. We reject this contention for the reasons discussed below. *See infra* ¶¶ 36–38.

Finally, the Purchase Agreement contained an integration clause, which read, in full:

> This Contract includes all of the terms, conditions, restrictions, limitations and other provisions on both the face and the reverse side hereof. This contract cancels and supersedes any prior contract and as of the date hereof comprises the complete and exclusive statement of the terms of the Contract relating to the subject matters covered hereby.

¶5 The Arbitration Agreement laid out which scenarios would be subject to arbitration. These included "[a]ny claim or dispute between the Parties . . . which arises out of or relates to Buyer's credit application, the condition of a vehicle, Buyer's purchase or financing contract, or any related transaction between the parties." Unlike the Purchase Agreement, the Arbitration Agreement did not contain an integration clause.

¶6 Shortly after purchasing the car, Montes sued National on several theories, seeking declaratory relief and over $300,000 in damages. In response, National moved to compel arbitration under the terms of the Arbitration Agreement. To this motion, National attached a declaration by the employee who had signed the Arbitration Agreement on the dealership's behalf. The employee stated that it was regular dealership practice to require all prospective buyers to sign an arbitration agreement. He also stated that Montes "had already executed" the Arbitration Agreement by the time he (the employee) signed it.

¶7 Montes opposed the motion, arguing that the Purchase Agreement's integration clause operated to exclude the Arbitration Agreement. He also argued that the Arbitration Agreement was unenforceable because he had rescinded and revoked it or, alternatively, because it was unconscionable.

¶8 The district court denied National's motion, concluding that, under Utah precedent, the Purchase Agreement's integration clause rendered the agreement fully integrated. And, under the parol evidence rule, where an agreement is fully integrated, "any other agreements between the parties are irrelevant."[2] The court

---

[2] As further explained below, the parol evidence rule "serves to exclude evidence of terms in addition to those in a written

(continued . . .)

also placed weight on the double-checked box, which it read to confirm that "no other agreements governed the sale." National filed an interlocutory appeal.

¶9 The court of appeals affirmed the district court's denial of National's motion. *Montes v. Nat'l Buick GMC, Inc.*, 2023 UT App 47, ¶ 1, 530 P.3d 544. National argued to the court of appeals that the two agreements should be "construed as one contract." *Id.* ¶ 20 (cleaned up). This followed from the rule in Utah law that multiple "instruments" should be construed together where they are executed simultaneously, signed by the same parties, and connected with the same transaction. *Id.* ¶ 11 (citing *Bullfrog Marina, Inc. v. Lentz*, 501 P.2d 266, 271 (Utah 1972)). Notably, we have stated that this rule applies even where instruments "do not in terms refer to each other." *Bullfrog Marina, Inc.*, 501 P.2d at 271. National argued that the two agreements met the conditions to trigger application of this rule and should therefore be considered together.

¶10 The court of appeals disagreed. A two-judge majority reasoned that the rule on which National relied morphs when one of the agreements contains an integration clause. *Montes*, 2023 UT App 47, ¶ 10–14. To reach this conclusion, the court relied on our opinion in *Tangren Family Trust v. Tangren*, 2008 UT 20, 182 P.3d 326. In *Tangren*, we examined a lease agreement between a father and son and an oral side agreement that the lease would take effect, if at all, only upon the father's death. *Id.* ¶¶ 5, 7, 14. Even though both father and son agreed on its terms, we held that evidence of the oral side agreement was not admissible on the question of integration in the face of the lease's integration clause. *Id.* ¶¶ 7, 17. Extrinsic evidence could come in only if the lease agreement was ambiguous. *Id.* ¶ 18. It wasn't. *Id.*

¶11 Although *Tangren* dealt with an oral side agreement, the court of appeals reasoned that *Tangren*'s "strong and categorical" language likely "applie[d] to written parol evidence as well." *Montes*, 2023 UT App 47, ¶ 14. The court of appeals held that *Tangren* had modified the rule *Bullfrog Marina* articulated: after *Tangren*, separate instruments relating to the same transaction are admissible to interpret an agreement with a clear integration clause only where either "the separate instrument is expressly referenced

---

integrated agreement." *Colonial Leasing Co. of New England, Inc. v. Larsen Bros. Constr. Co.*, 731 P.2d 483, 486 (Utah 1986).

by the [integrated] contract as being included" or "there is ambiguity" in the agreement that contains the integration clause. *Id.* ¶ 15. In the majority's judgment, the instruments between Montes and National failed to satisfy either possible predicate. *Id.* ¶¶ 15–18.

¶12 The court reinforced its general conclusion about the effect of integration clauses with specific features of the Purchase Agreement's integration clause. *See id.* ¶¶ 15–17. In the majority's reading, the wording of the Purchase Agreement's integration clause operated to exclude even roughly contemporaneous agreements. *Id.* ¶ 16. By noting that the Purchase Agreement "cancels and supersedes any prior contract," the integration clause ruled out anything signed previously; and by stating that "*as of the date hereof* [the Purchase Agreement] comprises the complete and exclusive statement of the terms of the [c]ontract relating to the subject matters covered hereby," the clause forbade any subsequent agreements. *Id.* (quoting the Purchase Agreement with emphasis added). From this, the court reasoned that it did not need to resolve an ambiguity in the record as to whether the Arbitration Agreement had been signed before or after the Purchase Agreement. *Id.* Either way, the latter's "plain language" excluded the former. *Id.*

¶13 The majority next opined that exclusion of the Arbitration Agreement was necessary to give effect to the integration clause's claim to cancel any contract "relating to the subject matters" covered by the Purchase Agreement. *Id.* ¶ 17 (emphasis omitted). Because each agreement discussed warranties and "the condition of the vehicle," they covered at least some of the same subject matters. *Id.* Thus, if the Arbitration Agreement were considered in any way, it would "contravene the exclusivity imposed by the integration clause." *Id.*

¶14 To buttress its conclusion, the majority further reasoned that the double-checked box indicating that no other terms were agreed to and the clause incorporating the Buyer's Guide showed that National "knew how to integrate other terms into the Purchase Agreement." *Id.* ¶ 18. The majority opined that if the parties had intended the Arbitration Agreement to take effect, "undoubtedly they would have" incorporated it into the Purchase Agreement by reference. *Id.*

¶15 Senior Judge Appleby dissented. *See id.* ¶ 29 (Appleby, J, dissenting). She would have had the district court consider the

Arbitration Agreement alongside the Purchase Agreement under the "collateral contract" exception to the parol evidence rule. *Id.* ¶ 38. That exception requires courts to admit a contract if it "is independent of, collateral to, and not inconsistent with" the agreement containing an integration clause. *Id.* ¶ 33 (quoting 11 *Williston on Contracts* § 33:27 (4th ed. 2022)). Judge Appleby read *Tangren* as a narrow opinion that, contrary to the majority's view, had not rendered collateral contracts "a legal impossibility under Utah law." *Id.* ¶ 32 (quoting *id.* ¶ 23 (majority opinion)). She interpreted the Purchase Agreement's integration clause to narrowly exclude only parol evidence relating to "other terms related to the sale of the vehicle"—not every agreement "tangentially related to the vehicle." *Id.* ¶ 35. She concluded that the integration clause did not exclude the Arbitration Agreement because the latter addressed dispute resolution, an issue apparently[3] not covered by the Purchase Agreement. *Id.*[4]

¶16 Judge Appleby discounted the importance of the double-checked box, arguing it was no "broader than the Purchase Agreement's integration clause itself." *Id.* She also noted that the majority's decision seemed to disregard "the driving consideration" of contract interpretation: the parties' intentions. *Id.* ¶ 37. She could not agree that National and Montes "signed multiple documents in connection with the sale of this vehicle but intended only one of them to be effective—for some reason signing additional documents as an exercise in futility." *Id.*

## ISSUE AND STANDARD OF REVIEW

¶17 National argues that the court of appeals erred when it held that, where one contract contains a clear integration clause, the parol evidence rule bars consideration of contemporaneous, duly executed agreements stemming from the same transaction.

¶18 "On a writ of certiorari, we review the decision of the court of appeals, not that of the district court, and apply the same

---

[3] *See infra* ¶ 39 n.8.

[4] Judge Appleby did not respond to the majority's argument that the slight subject matter overlap between the two agreements on warranties and the condition of the vehicle meant that the entire Arbitration Agreement had to be excluded under the integration clause's broad remit. *See Montes*, 2023 UT App 47, ¶ 24.

standard[s] of review used by the court of appeals." *State v. Wilder*, 2018 UT 17, ¶ 15, 420 P.3d 1064 (cleaned up).

¶19 "As a general rule, whether a trial court correctly decided a motion to compel arbitration is a question of law which we review for correctness, according no deference to the trial judge." *Cent. Fla. Invs., Inc. v. Parkwest Assocs.*, 2002 UT 3, ¶ 10, 40 P.3d 599. "[W]hether the motion to compel arbitration was erroneously denied is first a matter of contract interpretation." *Id.* "Therefore, we must initially determine whether the parties bargained for arbitration as a method of resolving their disagreements . . . ." *Id.*

¶20 "[C]ertain issues preliminary to the application of the parol evidence rule . . . are questions of law subject to de novo review." *Nova Grp./Tutor-Saliba v. United States*, 87 F.4th 1375, 1379 (Fed. Cir. 2023). A court may, for example, "conclude as a matter of law that [multiple] agreements [a]re inexorably associated with the same transaction" and thus "should be construed together." *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 108 (3d Cir. 1986). But where "the court's decision [about the parties' intent] hinges upon extrinsic evidence, it should be overturned only if clearly erroneous." *Brady v. Park*, 2019 UT 16, ¶ 29, 445 P.3d 395.

## ANALYSIS

¶21 National argues that the court of appeals misread *Tangren* when it construed that case to imply that Utah's parol evidence rule bars consideration of contemporaneous, executed, written agreements relating to the same transaction in the face of a clear integration clause. While we understand how *Tangren* could be read to reach the result the court of appeals did, *Tangren* did not squarely address the application of the parol evidence rule to contemporaneously signed agreements relating to the same transaction, even when one of those agreements contains an integration clause. And when we look at the policies motivating the parol evidence rule, we see no compelling reason why the rule should apply to prevent parties from introducing evidence of how the parties intended contemporaneously signed agreements on the same subject matter to interact.

¶22 The parol evidence rule "serves to exclude evidence of terms in addition to those in a written integrated agreement." *Colonial Leasing Co. of New England v. Larsen Bros. Constr. Co.*, 731 P.2d 483, 486 (Utah 1986). "We have defined an integrated agreement as a writing or writings constituting a final expression of one or more terms of an agreement." *Tangren Fam. Tr. v. Tangren*,

2008 UT 20, ¶ 12, 182 P.3d 326 (cleaned up). "To determine whether a writing is an integration, a court must determine whether the parties adopted the writing as the final and complete expression of their bargain." *Id.* (cleaned up). Integration clauses are "routinely incorporated in agreements in order to signal to the courts that the parties agree that the contract is to be considered completely integrated." *Ford v. Am. Express Fin. Advisors, Inc.*, 2004 UT 70, ¶ 28, 98 P.3d 15 (cleaned up).

¶23 We begin by examining the parol evidence rule's purposes, which serve as something of a guiding star to its application. This is because "the parol evidence rule, 'while simple to state, is often confusing in its application, *due largely to misunderstanding of its purposes*; that is, attempting to apply a rule rather than a reason.'" *Youngren v. John W. Lloyd Constr. Co.*, 450 P.2d 985, 987 (Utah 1969) (emphasis added) (quoting *Garrett v. Ellison*, 72 P.2d 449, 451 (Utah 1937)); *accord FMA Fin. Corp. v. Hansen Dairy, Inc.*, 617 P.2d 327, 329 (Utah 1980) (explaining that the parol evidence rule "should not be applied with any such unreasoning rigidity as to defeat what may be shown to be the actual purpose and intent of the parties, but should be applied in the light of reason to serve the ends of justice").

¶24 The rationale behind the parol evidence rule is that "when parties incorporate an agreement in a writing it is a reasonable assumption that everything included in the bargain is set down in the writing." 11 *Williston on Contracts* § 33:31 (4th ed. 2024) (cleaned up). This overarching justification encapsulates three more specific policy preferences and assumptions about the behavior of contracting parties:

> 1. "the legal preference, if not the talismanic legal primacy, historically given to writings";
>
> 2. a desire to reduce "the potential for litigation" by "ensuring that the contracting parties, whether as a result of miscommunication, poor memory, fraud, or perjury, will not vary the terms of their written undertakings"; and
>
> 3. "a presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements by deeming those earlier expressions to be merged into or superseded by the written document."

*Id.* § 33:1 (cleaned up); *accord* 6 *Corbin on Contracts* § 25.3 (2010) (listing similar rationales for the rule—"to reinforce the sanctity of the written word," "to prevent lies," and "to carry out the parties' final agreement in fact").

¶25 Our cases have frequently cited the first and second of these rationales—the written word's paramountcy and the judicial economies that stem from excluding potentially unreliable testimony about oral agreements. *See, e.g., Brady v. Park*, 2019 UT 16, ¶ 133, 445 P.3d 395 (Lee, A.C.J., concurring in part and dissenting in part) (explaining that a "hard" parol evidence rule reflects a belief "that the adjudication costs of opening the door to extrinsic evidence outweigh any benefits in the form of improving accuracy of judicial decision-making"); *FMA Fin. Corp.*, 617 P.2d at 329 (explaining that the parol evidence rule "serves a useful purpose in appropriate circumstances in safeguarding the integrity of [written] documents"); *E.A. Strout W. Realty Agency, Inc. v. Broderick*, 522 P.2d 144, 146 (Utah 1974) (stating that to permit parol evidence where a contract is not ambiguous "would be to cast doubt upon the integrity of all contracts and to leave a party to a solemn agreement at the mercy of the uncertainties of oral testimony given by one who in the subsequent light of events discovers that he made a bad bargain"); *Garrett*, 72 P.2d at 451–52 ("The [parol evidence] rule is founded upon the principle that . . . [written] terms, if clear and unambiguous, furnish better and more definite evidence of what was undertaken by each party than the too often fickle memory of man . . . .").

¶26 We have also spoken of the third rationale—the presumption that a last-in-time agreement swallows up all prior understandings. *See, e.g., Terry's Sales, Inc. v. Vander Veur*, 618 P.2d 29, 32 n.6 (Utah 1980) ("[W]ritten contracts are deemed to merge prior discussions. . . ."); *Lamb v. Bangart*, 525 P.2d 602, 607 (Utah 1974) ("All preliminary negotiations, conversations, and verbal agreements are merged in and superseded by the subsequent written contract, and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be altered by parol evidence.").

¶27 Parties sometimes attempt to ensure application of the parol evidence rule by writing the rule's rationales into their contracts with an integration clause. *See Harbor Vill. Home Ctr., Inc. v. Thomas*, 882 So. 2d 811, 816 (Ala. 2003) ("A merger clause, also known as an integration clause, is a portion of a particular contract

that restates the rationale of the parol evidence rule within the terms of the contract." (cleaned up)); *see also R.W.L. Enters. v. Oldcastle, Inc.*, 226 Cal. Rptr. 3d 677, 686 (Ct. App. 2017) ("The purpose of an integration clause is to preclude the introduction of evidence which varies or contradicts the terms of the written instruments." (cleaned up)).

¶28   Against this backdrop, *Tangren* held that "in the face of a clear integration clause, extrinsic evidence of a separate oral agreement is not admissible on the question of integration." *Tangren*, 2008 UT 20, ¶ 17. In *Tangren*, a father attempted to enforce a lease agreement against his son even where both parties agreed that, under the terms of an oral side agreement, the lease was intended to take effect, if at all, only after the father's death. *Id.* ¶¶ 6–7. *Tangren* took the father to be advancing an argument that a "separate oral understanding" can sometimes "override[]" a "written [agreement's] clear integration clause" and rejected that argument. *Id.* ¶ 14. Although *Tangren* repeatedly drew attention to the oral nature of the separate agreement at issue there and thrice expressly limited its holding to oral agreements, it dropped the adjective "oral" from a single statement of the holding. *Compare id.* ¶¶ 1, 17, 19 (all limiting the holding to contemporaneous "oral" agreements), *with id.* ¶ 16 ("[W]e will not allow extrinsic evidence of a separate agreement to be considered on the question of integration in the face of a clear integration clause."). A case issued later the same year recited *Tangren*'s holding and again omitted any limitation to oral agreements. *See Daines v. Vincent*, 2008 UT 51, ¶ 22, 190 P.3d 1269 ("we recently held in *Tangren* that '[e]xtrinsic evidence . . . is not admissible on the question of integration where the contract at issue contains a clear integration clause.'" (quoting *Tangren*, 2008 UT 20, ¶ 19)). Notably, however, that case did not consider a contemporaneous written instrument and gave no indication it meant its rule to apply to such. *See id.* ¶¶ 1, 18.

¶29   In reading *Tangren*'s holding to apply to written as well as oral contemporaneous agreements, the court of appeals majority placed great emphasis on the single instance where *Tangren*'s statement of its holding omitted the term "oral," *Daines*'s gloss on *Tangren*, and court of appeals case law interpreting *Tangren*. *See Montes*, 2023 UT App 47, ¶¶ 13–14 & n.4. While the majority's reasoning is understandable, we read *Tangren* differently. First, if the *Tangren* court had intended to announce a "sea change" that swept beyond the facts before it, *see id.* ¶ 13, we would expect to find that evidenced more clearly. With the lone exception noted

above, *Tangren* was careful to specify that its holding applied only to oral side agreements like the one at issue there. *See Tangren*, 2008 UT 20, ¶¶ 1, 17, 19. And, while *Tangren* indeed overruled or limited many prior cases, it specified that it did so only "[t]o the extent" that those cases "suggest[ed] that extrinsic evidence of a separate *oral* agreement [was] admissible where the contract contains a clear integration clause." *Id.* ¶ 16 n.20 (emphasis added).

¶30   Second, a close consideration of *Bullfrog Marina, Inc. v. Lentz*, 501 P.2d 266 (Utah 1972), and *Tangren*'s discussion of it, illustrates the deliberately narrow scope of *Tangren*'s holding. *Bullfrog Marina* dealt with two contracts: an employment agreement and a lease. *Id.* at 269. Neither agreement referenced the other. *See id.* Yet the record showed that both were related to the same underlying business deal—an arrangement to rent houseboats on Lake Powell—and so the district court construed them together. *Id.* at 269–70. In affirming this approach, *Bullfrog Marina* described the district court as having made a factual determination that the two contracts "bore a relationship to one another and should be considered as one agreement." *Id.* at 270. This determination, moreover, proceeded from a "full consideration of the entire transaction," including extrinsic evidence of the parties' intent. *Id.* at 270–71. The district court's findings sufficed to trigger application of

> the rule of law that where two or more instruments are executed by the same parties contemporaneously, or at different times in the course of the same transaction, and concern the same subject matter, they will be read and construed together so far as determining the respective rights and interests of the parties, although they do not in terms refer to each other.

*Id.* at 271.

¶31   Parol evidence, likely including oral evidence, happened to establish the relationship of the two written instruments in *Bullfrog Marina*. *See id.* at 269–71. Parol evidence may have been useful in that case given the unique facts of the transaction (a lease and an employment agreement make for a facially unrelated pairing). Regardless, nothing in *Bullfrog Marina* precludes a party from making the showing that multiple agreements relate to the

same transaction on the face of the documents alone.[5] *Tangren* surgically excised language from *Bullfrog Marina* and three other cases that sanctioned, or at least appeared to sanction,

---

[5] While we affirm the ongoing applicability of this rule to instruments that are executed simultaneously, we express no view as to whether the rule applies to instruments signed "at different times" and yet "in the course of the same transaction." *Bullfrog Marina, Inc.*, 501 P.2d at 271. *Bullfrog Marina*'s approval of agreements signed "at different times" appears to be an anomaly in Utah case law. *Cf. Strike v. White*, 63 P.2d 600, 602 (Utah 1936) (no mention of contracts signed at different times). *Bullfrog Marina* itself seems to have drawn that language from a Kansas case. *See* 501 P.2d at 271 n.4 (citing *West v. Prairie State Bank*, 436 P.2d 402, 405 (Kan. 1968) ("It is well settled in this jurisdiction that where two or more instruments are executed by the same parties contemporaneously, *or even at different times in the course of the same transaction*, and concern the same subject matter, they will be read and construed together . . ." (emphasis added)).

Other jurisdictions are divided on whether to require contemporaneity. *Compare Mo. Sav. Ass'n v. Home Sav. of Am.*, 862 F.2d 1323, 1326 (8th Cir. 1988) ("If several documents are *made at the same time* and relate to the same subject matter, they may be read together . . ." (emphasis added)), *with R.W.L. Enters. v. Oldcastle, Inc.*, 226 Cal. Rptr. 3d 677, 683 (Ct. App. 2017) (explaining that the rule "is most frequently applied to writings executed contemporaneously, but it is likewise applicable to agreements executed by the parties at different times if the later document is in fact a part of the same transaction" (cleaned up)).

Unlike contemporaneous agreements, agreements signed at different times might run afoul of the presumption that "a later agreement supersedes an earlier one." 6 *Corbin on Contracts* § 25.3 (2010). This would seem to weigh against permitting consideration of earlier documents. However, it is conceivable that this presumption of merger could be overcome in specific cases or that the presumption should apply with less force (if at all) where the earlier evidence comprises written, executed contracts—as opposed to mere "statements, negotiations, or oral agreements." *See* 11 *Williston on Contracts* § 33:1 (4th ed. 2024). That question is not before us because all the evidence before the district court indicated that the two agreements between Montes and National were signed on the same day. *See infra* ¶¶ 35–38.

consideration of *oral* agreements on the question of integration in the face of a clear integration clause. *See Tangren*, 2008 UT 20, ¶ 16 n.20. In so doing, *Tangren* left these cases otherwise intact— suggesting that, in each case, the offending language was not essential to the holding. *See id.* (explicitly overruling one case— *Ringwood v. Foreign Auto Works, Inc.*, 671 P.2d 182 (Utah 1983)— while merely "disavow[ing]" select "statements" from *Bullfrog Marina* and other cases). Nothing in this targeted approach indicates an intent to erase one of *Bullfrog Marina*'s animating rules from our jurisprudence—a rule that we have elsewhere called "well-established." *Strike v. White*, 63 P.2d 600, 602 (Utah 1936) ("Another well-established rule of law is that where two or more written instruments are executed as a part of one transaction such instruments should, when possible, be construed together.").[6] Thus, while *Tangren* did effect a notable change in Utah's formulation of the parol evidence rule, it did not sweep quite so broadly as the court of appeals majority believed. *Contra Montes*, 2023 UT App 47, ¶¶ 13–14.

¶32 Apart from our disagreement on the best reading of *Tangren*, we also part ways with the court of appeals because a ban on consideration of contemporaneous written agreements would not serve any of the traditional purposes of the parol evidence rule. Because they are written, these agreements carry little potential for fraudulent or self-serving post hoc testimony about their contents. And because they are contemporaneous, the presumption that preliminary agreements merge into the final contract does not apply.

¶33 Thus, without a firm textual hook or a motivating policy rationale, we see no reason to believe *Tangren* barred consideration

---

[6] Many other jurisdictions apply this rule and have used similar language to describe its entrenched status. *See, e.g.*, *S. Cal. Fed. Sav. & Loan Ass'n. v. United States*, 422 F.3d 1319, 1330 (Fed. Cir. 2005) ("basic rule of contract interpretation"); *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 107 (3d Cir. 1986) ("general rule"); *Prairie State Bank*, 436 P.2d at 405 ("well settled"); *Edward A. Kemmler Mem'l Found. v. 691/733 E. Dublin-Granville Rd. Co.*, 584 N.E.2d 695, 698 (Ohio 1992) ("general contract principle in Ohio law"); *Fort Worth Indep. Sch. Dist. v. City of Forth Worth*, 22 S.W.3d 831, 840 (Tex. 2000) ("well-established"); *Levinson v. Linderman*, 322 P.2d 863, 866 (Wash. 1958) ("general rule" (cleaned up)); *see also* CAL. CIV. CODE § 1642 (West 2024) (enacted 1872).

of contemporaneous written instruments where at least one of those instruments contains a clear integration clause.

¶34 Instead, this case is governed by our "well-established rule" that "where two or more written instruments are executed as a part of one transaction such instruments should, when possible, be construed together." *Strike*, 63 P.2d at 602. And this rule adheres even where the instruments "do not in terms refer to each other." *Bullfrog Marina, Inc.*, 501 P.2d at 271. Where multiple instruments are "executed at the same time and are intertwined by the same subject matter," the parol evidence rule "does not prevent the court from considering both [or all] agreements together, 'notwithstanding the presence of an integration clause.'" *Adams v. Parts Distr. Xpress, Inc.*, No. 2:20-cv-00697-JMG, 2021 WL 1088231, at *4 (E.D. Pa. Mar. 22, 2021) (quoting *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 108 (3d Cir. 1986)).

¶35 Montes does not dispute that the Purchase Agreement and the Arbitration Agreement are part of the same transaction. And the face of the documents confirms that this is so. The agreements are between the same parties and are marked with the same Vehicle Identification Number (VIN), deal number, and date.

¶36 Montes does purport to dispute when, or even whether, he signed the Arbitration Agreement. First, Montes argues that the district court expressed uncertainty on the sequencing of the two agreements. Second, he argues that National's employee declaration is insufficient to pin down the fact or timing of Montes's assent, where the employee stated that he saw Montes's signature on the Arbitration Agreement when he (the employee) signed it but did not personally see Montes sign it.

¶37 We find neither challenge persuasive. The district court questioned only whether the Arbitration Agreement was signed "before or after" the Purchase Agreement—not whether it was signed contemporaneously. Under the district court's reading of the integration clause, it mattered which agreement was signed first. But under the rule we apply today, the order in which the parties signed the agreements is immaterial—at least where the agreements are contemporaneous.[7] We are not called upon to decide the full scope of "contemporaneous" in this context. Here, it is enough that the uncontroverted evidence before the district court

---

[7] *See supra* ¶ 31 n.5.

demonstrated that both agreements were part of a package and signed on the same day.

¶38 And we do not view the employee's failure to witness Montes signing the Arbitration Agreement as creating a factual question about when he signed the agreement or whether he signed it at all. Notably, Montes has never alleged that his signature was forged or otherwise affirmatively asserted that he did *not* sign the Arbitration Agreement—he argues only that National has failed to carry its burden to show that he did sign it. But both the employee declaration and the Arbitration Agreement itself attest that Montes signed the Arbitration Agreement on the day that the vehicle sale was completed. And Montes failed to make a timely objection to either document in his memorandum opposing the motion to arbitrate. *See* UTAH R. CIV. P. 7(d)(1)(C), (f) (laying out procedures for objecting to evidence appended to motion memoranda). Consequently, unrebutted evidence shows that the agreements were signed by both parties and were signed on the same day. Accordingly, the two agreements should be construed together, notwithstanding the Purchase Agreement's integration clause.

¶39 On remand, the district court should consider the parties' arguments about how the two instruments should be read together.[8] We also again note that Montes argued rescission and revocation and unconscionability below as alternative grounds to void the Arbitration Agreement. Nothing we say in this opinion should be read to prevent the district court from reaching the merits of those arguments if necessary to the matter's resolution.

## CONCLUSION

¶40 National contends that the court of appeals erred when it concluded that Utah's parol evidence rule bars consideration of an

---

[8] At oral argument, counsel for Montes maintained that the Purchase Agreement contains a reverse side and that "paragraph six" of this reverse side addresses dispute resolution in a way that might conflict with the terms of the Arbitration Agreement. This reverse side is not before us. While Montes moved to supplement the record with it below, the district court denied his motion. Montes does not challenge that decision on appeal. We do not consider documents that fall outside the appellate record, no matter how much they might pique our interest. *See State v. Pliego*, 1999 UT 8, ¶ 7, 974 P.2d 279 ("An appellate court's review is limited to the evidence contained in the record on appeal." (cleaned up)).

Arbitration Agreement between National and Montes because the parties' contemporaneous Purchase Agreement contains an integration clause and does not expressly incorporate that Arbitration Agreement. We agree with National. Where two or more parties sign contemporaneous, executed instruments related to the same transaction, those agreements should be construed together—even where one contains a clear integration clause. We reverse the determination that the Purchase Agreement's integration clause precludes consideration of the Arbitration Agreement, vacate the denial of the motion to compel arbitration, and remand for further proceedings consistent with this opinion.

———————