**2025 UT App 124**

# THE UTAH COURT OF APPEALS

JOSHUA SCHMITH,
Appellee,
*v.*
ARNOLD J. SCHMIT,
Appellant.

Opinion
No. 20240347-CA
Filed August 14, 2025

Third District Court, Salt Lake Department
The Honorable Teresa Welch
No. 210906538

Rich Willie and David H. Culmer,
Attorneys for Appellant

Ben W. Lieberman, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES RYAN M. HARRIS and RYAN D. TENNEY
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Arnold J. Schmit (Uncle) appeals the trial court's dismissal of his contract-related counterclaims against his nephew, Joshua Schmith (Nephew). Specifically, Uncle asserts that the court erroneously considered extrinsic evidence to determine that "no legally binding contract . . . was ever formed between the Parties." We agree with Uncle, and we reverse and remand the case for further proceedings.

BACKGROUND

¶2    Around 2010, Nephew moved in with Uncle in a house Uncle owned, each one generally occupying a different level in the house. Uncle had neither a spouse nor children, and Nephew "was his closest relationship." Nephew was initially paying rent to Uncle, but by the end of 2013, the two came to a different arrangement, with an eye toward both Uncle's planned retirement and the logistics of what would happen to his estate upon his eventual passing. The parties entered into an agreement (the 2013 Writing) wherein Uncle agreed to add Nephew as a co-owner of his house and to pay half of the utilities, and Nephew agreed to take over the house payments, pay the other half of the utilities, and pay Uncle $1,000 monthly "until death." The 2013 Writing also contained an integration clause stating, "This document, including any attachments, is the entire agreement between the parties." As per his agreement, Uncle executed a quitclaim deed conveying the property to himself and Nephew "as [j]oint-tenants with full rights of survivorship."

¶3    At the end of 2018, the parties decided to update their agreement, providing some modifications and clarifying some of the terms from the 2013 Writing. They executed a second agreement (the 2018 Writing), which provided that (1) Nephew would pay the house payment, all the utilities, and the home insurance premium; (2) Nephew's $1,000 monthly payments to Uncle would not start until August 2026; and (3) Nephew would add Uncle as beneficiary on his life insurance policy in the amount of $175,000 until at least August 2030. The 2018 Writing again contained a provision stating that the writing was "the entire agreement between the parties."

¶4    The following year, in 2019, Nephew married and moved out. His brother then moved into the lower level of the house, with Nephew continuing to make house payments and to make sure that the utilities were paid. Over the next two years, Uncle

and Nephew's brother had a series of conflicts that led to the brother moving out in October 2021. Uncle then changed the locks and expended significant time and money repairing damage Uncle claimed the brother had caused to the lower level of the house. In February 2022, Uncle began renting out the lower level of the house.

¶5    In August 2023, Nephew, through counsel, contacted Uncle and requested use of the property commencing in October 2023. Uncle denied the request. Nephew thereafter sued Uncle, asserting claims of breach of contract and conversion and requesting a court-ordered sale of the property and division of the proceeds. Uncle responded by asserting counterclaims of breach of contract, unjust enrichment, and breach of the covenant of good faith and fair dealing, with a request "to reverse the transfer of the [p]roperty to [Nephew]" and to restore the parties to their pre-breach positions.

¶6    The case proceeded to a bench trial, wherein Nephew and Uncle testified regarding the above events and shared their respective understandings as to precisely what the agreement was between them. Both Nephew and Uncle testified that they had made additional agreements that were not reflected in the 2018 Writing, although they disagreed as to the substance and materiality of those additional agreements.

¶7    In the resulting decision of the trial court, the court determined that Nephew and Uncle had each failed to prove their respective breach of contract claims. The court's reasoning was as follows:

> [T]he trial evidence indicated that there was no legally binding contract that was ever formed between the Parties as there was no meeting of the minds as to essential features. At trial, both Parties testified under oath that the 2013 and 2018 Writings

did not constitute their full agreements as to their agreed upon material terms, despite the integration language that was contained in both written documents. Thus, according to the trial evidence when taken as a whole, the 2013 and 2018 Writings did not constitute a legally binding contract between the Parties where the Parties['] trial testimonies conflicted with the plain language of the 2013 and 2018 Writings.

Importantly, the Parties' trial testimonies also indicated that they disagreed about the specifics of what constituted their additional, mutual, and material agreements in their prior oral (and not written) exchanges. . . . In short, the Court applies pertinent Utah law to the evidence produced at the trial and decides that neither [Nephew] nor [Uncle] met their burden of proving by a preponderance of the evidence that an enforceable, legally valid contract existed between them where the evidence indicated that there was no meeting of the minds on definite and unambiguous terms and on all essential features.

(Citation omitted.) The court did, however, rule in Nephew's favor on his conversion claim, awarding him the rent received on the property from October 2023—the date he was denied use of the property—forward. As to Nephew's request for the sale of the property, the court disagreed that such a resolution was necessary and, instead, ordered Uncle to pay Nephew half of the equity in the property, at which point Nephew's name would be removed from the deed. The court also dismissed Uncle's additional counterclaims for unjust enrichment and breach of the covenant of good faith and fair dealing.

ISSUE AND STANDARD OF REVIEW

¶8    Uncle now appeals. He argues that the 2013 Writing and the 2018 Writing are integrated, unambiguous contracts and that the trial court therefore erred in considering extrinsic evidence of additional oral agreements to determine that the 2013 Writing and the 2018 Writing are not valid contracts. "[I]ssues pertaining to . . . admittance of parol evidence present questions of law which we review under a correctness standard, granting no particular deference to the trial court." *Bennett v. Huish*, 2007 UT App 19, ¶ 8, 155 P.3d 917.

ANALYSIS

¶9    Uncle contests the trial court's determination underlying the dismissal of his breach of contract claim, specifically, the court's determination that "there was no legally binding contract that was ever formed between the Parties" because "both Parties testified under oath that the 2013 and 2018 Writings did not constitute their full agreements" and "they disagreed about the specifics of what constituted their additional, mutual, and material agreements in their prior oral (and not written) exchanges." Uncle argues that because the writings each contained an integration clause stating that the writing was "the entire agreement between the parties," it was error for the court to look to extrinsic evidence to determine whether the writings amounted to a complete agreement between the parties.[1] We agree.

---

1. Because the challenge here is not directed at the trial court's factual findings but, instead, at whether the court followed the law when it considered extrinsic evidence in arriving at its findings and conclusions, there is not, as Nephew suggests, a

(continued…)

¶10 An integrated agreement is "a writing or writings constituting a final expression of one or more terms of an agreement." *Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 12, 182 P.3d 326 (quotation simplified); *see also Montes v. National Buick GMC, Inc.*, 2024 UT 42, ¶ 24, 562 P.3d 688 ("When parties incorporate an agreement in a writing it is a reasonable assumption that everything included in the bargain is set down in the writing." (quotation simplified)). And when an agreement is integrated, the parol evidence rule "operates, in the absence of fraud or other invalidating causes, to exclude evidence of contemporaneous conversations, representations, or statements offered for the purpose of varying or adding to the terms of [the contract]." *Tangren*, 2008 UT 20, ¶ 11 (quotation simplified). Thus, "if the court finds the agreement is integrated, then parol evidence may be admitted only if the court makes a subsequent determination that the language of the agreement is ambiguous." *Id.* (quotation simplified). We address each of these components in sequence: (1) whether the writings at issue were integrated, (2) whether any invalidating causes were present, and (3) whether ambiguity would justify the consideration of extrinsic evidence.

## I. Integration

¶11 We agree with Uncle that *Tangren Family Trust v. Tangren*, 2008 UT 20, 182 P.3d 326, is controlling here on the question of integration. In that case, a father and son worked to build a ranch on property that was held in a family trust, of which the father

marshaling requirement that Uncle must fulfill. *See C.R. England Inc. v. Labor Comm'n*, 2024 UT App 170, ¶ 28, 561 P.3d 213 ("A party challenging a factual finding or sufficiency of the evidence will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal." (quotation simplified)), *cert. denied*, 564 P.3d 958 (Utah 2025); *Cox v. Cox*, 2023 UT App 62, ¶ 34 n.6, 532 P.3d 128 (noting that the marshaling requirement does not apply to a challenge regarding "a legal question").

was the trustee and his children were the beneficiaries. *See id.*
¶¶ 2–4. After the son had invested significant capital and time
into the ranch, he became concerned that his siblings, as
additional trust beneficiaries, might try to take his interest in the
ranch. *See id.* ¶ 5. As a result, the father and the son entered into a
lease agreement to protect the son's share from any claim of his
siblings upon the father's death. *See id.* ¶¶ 5, 7. Although the
parties would later testify that the lease was not intended to be a
functioning lease but would come into effect if necessary to
defend against later sibling actions, *see id.* ¶ 7 & nn.1–2, the lease
nonetheless contained an integration clause providing that the
lease "contain[ed] the entire understanding between the parties
with respect to its subject-matter," *id.* ¶ 5 (quotation simplified).

¶12 Several years later, the parties' relationship deteriorated, a
lawsuit was filed, and the validity of the lease became a central
issue in the ensuing litigation. *See id.* ¶¶ 6, 8–9. On appeal before
our supreme court, the father argued that, despite the integration
clause, the lease was *not* an integrated agreement because the
parties had a separate oral agreement that either the lease was
invalid or that it was subject to a condition precedent. *See id.* ¶ 16.

¶13 The supreme court rejected the father's assertion that the
parties' additional oral agreement should be considered on the
question of integration. *See id.* The court recognized that "extrinsic
evidence is appropriately considered, even in the face of a clear
integration clause, where the contract is alleged to be a forgery, a
joke, a sham, lacking in consideration, or where a contract is
voidable for fraud, duress, mistake, or illegality." *Id.* ¶ 15. But the
court observed that the father was alleging none of those
circumstances; that is, the father was not asserting that the lease
was "complete yet invalid on one of the above-described bases for
invalidity" but, rather, that the lease was "incomplete because he
and [his son] entered into a separate oral agreement"—an
argument that was "in direct contradiction to the clear integration
clause." *Id.* ¶ 16. The court held, "[I]n the face of a clear integration

clause, extrinsic evidence of a separate oral agreement is not admissible on the question of integration." *Id.* ¶ 17. Thus, the court proceeded to "the second step in assessing the applicability of the parol evidence rule," that is, whether the lease terms were ambiguous. *Id.* ¶ 18. And because neither party had challenged the lease's terms as ambiguous, the court concluded, "The parol evidence rule therefore bars the use of extrinsic evidence to vary or add to the terms of the [l]ease because it is valid, integrated, and unambiguous." *Id.*

¶14 Applying *Tangren* here, because the 2013 Writing and the 2018 Writing each contain an integration clause clearly asserting that the writing "is the entire agreement between the parties," it was error for the trial court to rely on the parties' testimonies regarding additional oral agreements to determine that the writings "did not constitute their full agreements."[2] Although the

---

2. Nephew takes issue with Uncle addressing the 2013 Writing on appeal and argues that "any argument that the 2013 Writing can be relied upon to supplement or interpret the 2018 Writing is factually and legally incorrect and . . . has been waived" due to Uncle's primary contention below that the 2018 Writing "is the only agreement" between the parties. (Footnote omitted.) Uncle, however, clarifies in his reply brief that he considers the 2013 Writing "necessarily at issue" because "[i]f the 2018 Writing is deemed invalid, then the 2013 Writing necessarily remains the operative agreement." Thus, it appears Uncle is making no argument that the 2013 Writing serves to supplement or help interpret the 2018 Writing.

　　Moreover, because the trial court ruled on the validity of the 2013 Writing and because Nephew has challenged that ruling on appeal, such arguments are neither unpreserved nor waived. *See Fort Pierce Indus. Park Phases II, III & IV Owners Ass'n v. Shakespeare*, 2016 UT 28, ¶ 13, 379 P.3d 1218 ("[T]he district court's

(continued…)

court could properly have considered extrinsic evidence in the face of asserted invalidating causes such as mistake or fraud, the court's reasoning relied on no such invalidating cause to allow it to hear and consider extrinsic evidence on the question of integration. Instead, the court took the parties' acknowledgement of additional oral agreements as proof that the writings were not the integrated agreements they clearly purported to be; such reasoning is plainly prohibited by *Tangren*.[3] *See id.* ¶¶ 16–17.

## II. Invalidating Causes

¶15 Nephew pushes back, asserting that certain invalidating causes were present here that, under *Tangren*, allowed the consideration of extrinsic evidence; specifically, he asserts mutual mistake and a lack of consideration. *See Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 15, 182 P.3d 326 ("[E]xtrinsic evidence is

---

decision to take up the question conclusively overcame any objection that the issue was not preserved for appeal."); *State v. Johnson*, 2017 UT 76, ¶ 16, 416 P.3d 443 ("When a party fails to raise and argue an issue on appeal, or raises it for the first time in a reply brief, that issue is waived and will typically not be addressed by the appellate court.").

3. Nephew argues that *Tangren* only applies when a writing "appears to be a complete and certain agreement," *see Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 12, 182 P.3d 326 (quotation simplified), and therefore would not prohibit the consideration of extrinsic evidence regarding the 2018 Writing, which he argues is "objectively incomplete on its face." But aside from an asserted lack of consideration—which we address in Part II.B and which, if it exists, would on its own except this case from *Tangren*'s rule limiting the use of extrinsic evidence—Nephew points to nothing in the writings themselves that would make them appear incomplete or uncertain. Thus, we reject his attempt to differentiate this case from *Tangren* on this point.

appropriately considered, even in the face of a clear integration clause, where the contract is alleged to be a forgery, a joke, a sham, lacking in consideration, or where a contract is voidable for fraud, duress, mistake, or illegality."). But the trial court's analysis made no specific reference to mutual mistake or a lack of consideration, nor do we read any of the court's reasoning as relying on those justifications. However, upon remand, the trial court is free to consider the potential invalidating causes recognized in *Tangren* in addressing the contractual claims before it. Although we leave these issues for determination by the trial court in the first instance, we provide some limited guidance that may assist the court upon remand.[4]

---

4. Uncle additionally argues on appeal that even if the trial court is ultimately correct as to the invalidity of the writings, the appropriate remedy should attempt to restore the parties to their pre-contract positions, not give Nephew "a massive windfall" by awarding him the rent received for the property and a payout of half the equity in the property. While we have reversed the trial court's determination as to the invalidity of the writings, the possibility remains upon remand that the court may, through different reasoning, again arrive at a determination that the contracts are invalid. And for that reason, we note that Uncle is correct in his remedy argument; in such a situation, where a contract is void or voidable meriting rescission, the remedy should focus on returning the parties to their pre-contract positions. *See Anderson v. Doms*, 2003 UT App 241, ¶ 11, 75 P.3d 925 ("Rescission is a restitutionary remedy that attempts to return parties to the status quo. The goal of rescission is to restore the status quo that existed prior to the parties' agreement. The status quo rule is equitable, and requires practicality in adjusting the rights of the parties." (quotation simplified)); *see also* 17B C.J.S. *Contracts* § 657 (2025) ("The objective of rescission is to return the

(continued…)

A.      Mutual Mistake

¶16    "A mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain." *Cantamar, LLC v. Champagne*, 2006 UT App 321, ¶ 38, 142 P.3d 140 (quotation simplified). "A mutual mistake of fact can provide the basis for equitable rescission or reformation of a contract even when the contract appears on its face to be a complete and binding integrated agreement." *Burningham v. Westgate Resorts, Ltd.*, 2013 UT App 244, ¶ 12, 317 P.3d 445 (quotation simplified). "In addition, a mutual mistake theory may apply to instances where the parties misunderstood the legal effect of the words in a document and may result in reformation of a [contract]." *West One Trust Co. v. Morrison*, 861 P.2d 1058, 1061 (Utah Ct. App. 1993); *see also Cantamar*, 2006 UT App 321, ¶ 38. "The proponent of a mutual-mistake claim must prove the elements by clear and convincing evidence." *Bergmann v. Bergmann*, 2018 UT App 130, ¶ 14, 428 P.3d 89 (quotation simplified).

B.      Lack of Consideration

¶17    "If [a] plaintiff fails to show there is consideration to support the contract, that party has failed to meet its burden and the contract will be held invalid by the court." *DeMentas v. Estate of Tallas ex rel. First Sec. Bank*, 764 P.2d 628, 631–32 (Utah Ct. App. 1988). "Consideration is present when there is an act or promise given in exchange for the other party's promise." *Cea v. Hoffman*, 2012 UT App 101, ¶ 26, 276 P.3d 1178 (quotation simplified). "Any detriment can support a promise, no matter how economically inadequate," and that detriment may be in the form of a

---

parties to the same position they would have occupied had they not entered into the contract, and rescission generally requires restoration of the parties to the status quo as it existed prior to the execution of the contract." (footnotes omitted)).

bargained-for forbearance. *Mortensen v. Mortensen*, 2025 UT App 8, ¶ 19, 564 P.3d 508 (quotation simplified), *cert. denied*, 570 P.3d 659 (Utah 2025). Thus, "ordinarily, courts will not inquire into the adequacy of consideration unless it is so insufficient or illusory as to render enforcement of the contract unconscionable." *Id.* (quotation simplified).[5]

## III. Ambiguity

¶18 Even when a contract is integrated, extrinsic evidence may still be considered to clarify ambiguous contract terms. *See Tangren Family Trust v. Tangren*, 2008 UT 20, ¶¶ 11, 18, 182 P.3d 326 ("[I]f a contract is integrated, parol evidence is admissible only to clarify ambiguous terms."). Nephew argues that we should use this rule as an alternative ground to affirm the trial court's consideration of extrinsic evidence and its resulting determination. *See Olguin v. Anderton*, 2019 UT 73, ¶ 20, 456 P.3d 760 ("It is within our discretion to affirm a judgment on an

---

5. Although we remand this case to the trial court so that it may address potential invalidating causes in the first instance, we do observe that the lack-of-consideration argument, at least as it has been articulated on appeal—that the 2018 Writing lacks consideration because it contains no obligations of Uncle—seems foreclosed by the findings of the trial court, which essentially recognize a significant forbearance on the part of Uncle. The court found that in the 2013 Writing, Nephew agreed to "pay the house payments and the remaining one-half of the utilities, while also paying [Uncle] $1,000 a month until [Uncle] dies." The court then found that the 2018 Writing "updated the timing of the payments that [Nephew] was to make to [Uncle]," referencing the provision that Uncle would not begin receiving the promised monthly payments until 2026. Thus, assuming the 2013 Writing is determined to be valid, the specification in the 2018 Writing of a later start date reflects a lengthy period of forbearance.

alternative ground if it is apparent in the record." (quotation simplified)). We decline this invitation.

¶19 "A contractual term or provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meanings of terms, missing terms, or other facial deficiencies." *Daines v. Vincent*, 2008 UT 51, ¶ 25, 190 P.3d 1269 (quotation simplified). When presented with an assertion of ambiguity, the court considers "any relevant evidence" of asserted interpretations, but after doing so, the court "must ensure that the interpretations contended for are reasonably supported by the language of the contract." *Id.* ¶ 26 (quotation simplified). "Thus, even though we permit admission of extrinsic evidence to support a claim of ambiguity in contractual language, the claim must be plausible and reasonable in light of the language used." *Id.* ¶ 31 (quotation simplified). "[T]here can be no ambiguity where evidence is offered in an attempt to obscure otherwise plain contractual terms." *Id.*; *see also id.* ¶ 27 ("[We do] not intend that a judge allow surrounding circumstances to create ambiguity where the language of a contract would not otherwise permit.").

¶20 Here, Nephew points to no particular language in the writings that relates to his ambiguity argument.[6] Instead, he simply asserts that the 2018 Writing "is anything but a clear and complete agreement" and that "[i]t has obvious deficiencies apparent on its face."[7] But without either pointing us to specific

6. Nor do we see that Nephew advanced any ambiguity argument before the trial court.

7. Much of Nephew's argument on this point seems to be based on an alleged lack of consideration, which we have already noted seems foreclosed by the trial court's factual findings, *see supra* note 5, and, therefore, would not make this an avenue for affirmance

(continued…)

contractual language that is unclear and susceptible to multiple reasonable interpretations or identifying essential terms that are missing, his ambiguity argument wholly fails and provides no alternative route to affirming the decision of the trial court.[8]

CONCLUSION

¶21 Because the 2013 Writing and the 2018 Writing contained clear integration clauses, the trial court erred in relying on extrinsic evidence to determine that the writings were not integrated and therefore no contract was formed between Uncle and Nephew. Accordingly, we reverse the trial court's judgment, and we remand this case for such further proceedings as may now be appropriate.

––––––––––

that is "apparent in the record," *Olguin v. Anderton*, 2019 UT 73, ¶ 20, 456 P.3d 760 (quotation simplified).

8. Moreover, even had Nephew advanced a persuasive ambiguity argument, the result of such would likely not be the result he seeks, that is, an affirmance of the trial court's finding of no valid contract. *See Regal RealSource LLC v. Enlaw LLC*, 2024 UT App 95, ¶ 21, 554 P.3d 1112 ("If, however, the language of the contract is ambiguous, that does not necessarily mean that the contract is unenforceable for vagueness. In most cases, the presence of ambiguity simply signals that additional litigation and analysis is required; at that point, interpretation of the contract—and ascertaining the parties' intent—becomes a question of fact instead of a question of law." (citations omitted)), *cert. denied*, 558 P.3d 89 (Utah 2024).